**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2810-19

RODNEY H. GILYARD,

    Plaintiff-Respondent,

v.

KELLY A. HICKS-GILYARD,

    Defendant-Appellant.

_____

> Argued September 7, 2021 – Decided September 15, 2021
>
> Before Judges Alvarez and Gooden Brown.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FM-20-0596-16.
>
> Ada A. Davis argued the cause for appellant.
>
> Gail Mitchell argued the cause for respondent (Schwartz Barkin & Mitchell, attorneys; Gail Mitchell, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant/ex-wife appeals from the January 31, 2020 Family Part order denying her motion for reconsideration of an October 1, 2019 order. The October 1, 2019 order denied defendant's request to compel plaintiff/ex-husband to sell their marital home and required defendant to sign a quitclaim deed to the residence. We affirm.

The parties divorced on December 7, 2016, after a twenty-one-year marriage. They entered into a comprehensive Marital Settlement Agreement (MSA) which was incorporated into the Judgment of Divorce (JOD). The MSA delineated plaintiff's obligation to pay defendant alimony, provided for the distribution of marital assets and allocation of marital debt, and addressed other issues related to the dissolution of the marriage.

Regarding the marital home, paragraph sixteen of the MSA provided "[w]ife shall receive sole right to live in the [m]arital [h]ome for two years," after which "[w]ife shall either purchase the home from [h]usband, or the home is to be sold by [h]usband." Paragraph seventeen provided "[w]ife shall be responsible for one-third of any tax liability for debt forgiveness related to the sale of the home" and "[h]usband shall be responsible for two-thirds of any tax liability for debt forgiveness related to the sale of the home."

Notably, paragraph eighteen provided:

> Wife shall pay the mortgage, insurance, and taxes due on the current mortgage encumbering the property for the period of two years after [h]usband brings mortgage current. Said mortgage shall be kept current. If the mortgage payment becomes two months or more late, the house shall be placed on the market for sale.

The equitable distribution provisions in the MSA addressed distribution of "the marital estate pursuant to N.J.S.A. 2A:34-23," but made no mention of the marital home. Paragraphs thirty-six and thirty-seven provided that each party "accept[ed] the provisions [in the MSA] . . . in lieu of and in full settlement and satisfaction of any and all claims and rights against" the other party. Further, paragraph forty-eight specified the parties "waive[d] their rights" to obtain discovery "identifying and valuing assets subject to equitable distribution," and paragraph seven acknowledged the agreement "represent[ed] a compromise of the [p]arties' various positions."

In paragraph fifty-two, the parties agreed any "modification or waiver of any of the provisions of th[e a]greement . . . shall be effective when and only if made in writing and executed with the same formality as th[e a]greement." Further, "[t]he failure of either [p]arty to insist upon strict performance of any . . . provision . . . shall not be construed as a waiver of any subsequent

3

default . . . ." In various provisions throughout the agreement, the parties also agreed the MSA was "equitable and fair," was not "the result of any fraud, duress or undue influence," was executed "freely and voluntarily," and with a full understanding of "the terms and provisions" of the agreement "as well as their rights." Defendant was represented by counsel in the drafting and execution of the MSA while plaintiff was not.

Approximately two years after the JOD was entered, plaintiff moved to terminate his alimony obligation, alleging cohabitation. Defendant opposed the motion and moved for enforcement of litigant's rights, seeking to compel plaintiff to sell the marital home pursuant to paragraph sixteen of the MSA.[1] Plaintiff opposed defendant's motion, certifying he was "not in violation of [their] agreement."

According to plaintiff, notwithstanding the provision in paragraph sixteen of the MSA, the parties had subsequently agreed that he "would be moving back into the home" after defendant vacated the residence and they would only sell the home if they both agreed. Plaintiff acknowledged there was no written modification of the MSA to that effect, as required in paragraph

---

[1] Defendant sought other relief not pertinent to this appeal.

A-2810-19

fifty-two, but stated defendant had told him "it was not necessary." Plaintiff attached text messages between the parties corroborating his account.

Plaintiff further averred he "did not list the home based on [defendant's] representations." However, he completed "a loan modification that put the mortgage in [his] name" alone. Plaintiff added, "[n]othing in the agreement indicate[d] that [d]efendant [was] entitled to anything from the home so there [was] absolutely no reason for the home to be sold."

In a reply certification, defendant stated although the parties "discussed" plaintiff retaining the house, rather than selling it as required under the MSA, she denied agreeing to it or signing an agreement to that effect. Defendant stated their discussions to relieve him of the obligation of selling the house occurred "before [plaintiff] filed th[e] motion" to terminate his alimony obligation, which motion made plaintiff untrustworthy in her eyes. As a result, defendant did not want her name to "remain[] on the deed to the property" with someone she no longer trusted and wanted the property sold so that she could "receive [her] share of the value of the property." Contrary to plaintiff's claim, defendant asserted she was "entitled to one half of the equity in the property accumulated from the time [they] moved in until the divorce was finalized and 100% of the equity for the time [she] paid the mortgage herself."

5

A three-day plenary hearing was conducted on July 23 and 24, and September 23, 2019. Although the proofs adduced at the hearing were primarily focused on the cohabitation issue, in her testimony, defendant acknowledged sending the text messages to plaintiff in which she agreed plaintiff did not have to sell the house despite the contrary provision in the MSA. During the hearing, the parties' attorneys also agreed there was no provision in the MSA for equitable distribution of the marital home because, at the time, it was "under[]water" and had no equity. Thus, it was anticipated the eventual sale would generate a loss, necessitating paragraph seventeen allocating tax liability for debt forgiveness related to the sale.

Following the hearing, on October 1, 2019, the trial judge issued an order denying defendant's application to "compel[] plaintiff to sell the marital home" and ordered "[t]he parties . . . [to] execute a quitclaim deed by November 1, 2019." [2] In an accompanying written opinion, the judge acknowledged that the MSA "[c]learly[] . . . require[d] plaintiff to sell the home." However, according to the judge, "defendant could not articulate any benefit or detriment to her if the property was not sold."

The judge stated:

---

[2] The order also denied plaintiff's motion to terminate his alimony obligation based on alleged cohabitation.

A-2810-19

The reason articulated by defendant for her request was that her name appears on the deed and she does not want it to be. Defendant does not assert she would be entitled to any proceeds from the sale. Plaintiff has proposed the execution of a quitclaim deed to remove defendant's name from the deed. It would also absolve her of any liability under [p]aragraph [seventeen] as plaintiff would then be solely responsible. As this is a court of equity, this court will not grant defendant's motion compelling a sale. To do so under these circumstances would dispossess plaintiff of his residence for no apparent purpose. As there is no benefit for defendant in the sale, and the only detriment, having her name on the deed, can be accomplished by a quitclaim deed, there is simply no reason to compel the sale.

Additionally, defendant agreed in the text message exchange between the parties on October 8, 2018 . . . that she would not force him out of the house. To force him out now, after he filed his cohabitation motion, appears to be motivated by spite, not reason.

Defendant moved for reconsideration of the October 21, 2019 order pursuant to Rule 4:49-2. In a supporting certification, defendant confirmed when the parties "negotiated the MSA, [p]laintiff had already moved out of the [marital] home; the mortgage was several months behind; and the house was believed to be worth less than the mortgage encumbering it." As a result, the MSA "only include[d] a division of debt" related to the sale of the home. Defendant acknowledged "originally," she was "willing to delay the sale of the

house." However, because of the complete deterioration of her prior amicable post-judgment relationship with plaintiff, she now wanted a "valuation of [her] share" of the home so that she could "be compensated for it." Plaintiff opposed the motion, reiterating that "[n]othing in the [MSA] indicate[d] that [defendant] was entitled to any equity in the home" because "there was [no equity]."

In a January 31, 2020 order, the judge denied "[d]efendant's motion for reconsideration of the [c]ourt's [o]rder denying her motion to compel the sale of the marital residence" and ordered defendant to "immediately execute a quitclaim deed as required in the . . . October 1, 2019 [order]." In an accompanying statement of reasons, the judge posited the issue presented by defendant was whether "the court overstepped its authority by not enforcing the parties' [MSA] . . . when it denied defendant's [motion] to compel plaintiff to sell the marital home . . . as required by the MSA" and in relying on "defendant's text messages in finding that she [had] agreed to allow plaintiff to remain in the home." The judge also considered defendant's argument that "the court [should have] scheduled a [plenary] hearing" to ascertain "the parties' intention to divide any interest in the property upon its sale."

A-2810-19

In rejecting defendant's contentions, the judge stated "[t]he arguments raised . . . [were] essentially the same as the arguments raised and considered at the plenary hearing." The judge determined that he had not "based [his] decision upon a palpably incorrect basis, or . . . failed to appreciate the significance of probative, competent evidence." Instead, the judge explained "[t]he court ruled as it did as it found that defendant had consented to plaintiff residing in the marital home, and because defendant's request to compel the sale was based upon her desire to remove her name from the deed, which could be accomplished by a quitclaim deed."

Turning to defendant's argument "that a plenary hearing should have been scheduled regarding the intent" of the MSA, the judge "disagree[d]," stating:

> Initially, the court notes that neither party requested additional testimony. Secondly, the intent of the [MSA] provisions was clear based upon a plain reading of the provisions. Further, the arguments of counsel and testimony of the parties during the hearing regarding the value of the home were more than sufficient in highlighting the issues and what would be accomplished by a sale. As the home would be sold at a loss, neither plaintiff nor defendant would benefit financially. Both would be exposed to the potential tax liability for the debt forgiveness as set forth in [p]aragraph [seventeen]. And, as defendant's counsel represented on the record, defendant sought to

compel the sale because she did not want her name on the deed.

Lastly, plaintiff and defendant both testified extensively about . . . the text message exchange in October 2018 in which defendant clearly indicates that plaintiff need not sell the house. After thanking her for "everything," . . . plaintiff advises [defendant] that he will" . . . write up an agreement for [her] to sign stating that [he does not] have to sell the house because it's in the divorce agreement." [Defendant] responds, "Yes, it is in your name. Why do you want to write up an agreement, it's in the divorce, you didn't force me out, so why would I force you out. I guess someone told you to do that." Defendant further acknowledged on cross-examination that she allowed him to "stay" in the house, and on re-direct that she "later changed [her] mind," but that she never told him she changed her mind because "this came about," referring to plaintiff's filing of his cohabitation motion.

In this ensuing appeal, defendant raises the following points for our consideration:

I. THE TRIAL COURT ERRED WHEN IT DENIED DEFENDANT'S MOTION TO ENFORCE LITIGANT'S RIGHTS BECAUSE THE PLAIN LANGUAGE OF THE [MSA] REQUIRED PLAINTIFF TO SELL THE MARITAL HOME.

A. Paragraph [Sixteen] Of The MSA Clearly Requires The Plaintiff To Sell The Marital Home Because Defendant Moved Out.

B. The Court Abused Its Discretion When It Relied On Text Messages And Oral Communications To Modify The MSA Because Paragraph [Fifty-Two] Of The MSA Requires Any Modifications To Be In Writing And Executed With The Same Formality Of The MSA To Be Effective.

II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT DENIED DEFENDANT'S MOTION FOR RECONSIDERATION BECAUSE THE PLAIN LANGUAGE OF THE [MSA] REQUIRED PLAINTIFF TO SELL THE MARITAL HOME.

III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT INVOKED ITS EQUITABLE POWERS TO REWRITE THE PARTIES['] AGREEMENT.

A. The Trial Court Abused Its Discretion When It Invoked Its Equitable Power To Rewrite The Parties['] Agreement Despite Clear Evidence That The MSA Was Entered Into Voluntarily, Consensually, And Knowingly By Both Parties.

B. The Court Abused Its Discretion When It Invoked Its Equitable Power And Ordered That [Defendant] Execute A Quitclaim Deed Transferring Her Property Ownership To [Plaintiff] Because It Improperly Vacated The Parties' Settlement Agreement.

IV. THE COURT ABUSED ITS DISCRETION WHEN IT ORDERED DEFENDANT TO EXECUTE A QUIT CLAIM DEED WITHOUT FIRST HOLDING A PLENARY HEARING TO

11

DETERMINE THE ACTUAL VALUE OF THE MARITAL HOME AND THE AMOUNT OF THE MORTGAGE ENCUMBERING IT.

Our review of orders entered by the Family Part is generally deferential. Landers v. Landers, 444 N.J. Super. 315, 319 (App. Div. 2016). "[W]e defer to factual findings 'supported by adequate, substantial, credible evidence' in the record." Ibid. (quoting Gnall v. Gnall, 222 N.J. 414, 428 (2015)). "Reversal is warranted when we conclude a mistake must have been made because the trial court's factual findings are 'manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Ibid. (alteration in original) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "However, when reviewing legal conclusions, our obligation is different; '[t]o the extent that the trial court's decision constitutes a legal determination, we review it de novo.'" Ibid. (alteration in original) (quoting D'Agostino v. Maldonado, 216 N.J. 168, 182 (2013)).

Our review of motions for reconsideration under Rule 4:49-2 is also governed by a deferential standard.

> Motions for reconsideration are granted only under very narrow circumstances:

> Reconsideration should be used only for those cases which fall into that narrow corridor in which either (l) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence.
>
> [Fusco v. Bd. of Educ. of City of Newark, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div.1990)).]

"[A] trial court's reconsideration decision will be left undisturbed unless it represents a clear abuse of discretion." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). "An abuse of discretion 'arises when a decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis."'" Ibid. (quoting Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002)). "Reconsideration cannot be used to expand the record and reargue a motion," and "[a] litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Cap. Fin. Co. of Delaware Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (alteration in original) (quoting D'Atria, 242 N.J. Super. at 401).

On appeal, defendant argues the judge abused his discretion by ignoring the "plain language of the parties' MSA" requiring the sale of the marital home; by "rel[ying] on the oral statements and text messages . . . to modify the parties' MSA," contravening paragraph fifty-two requiring modifications to be in writing; and by utilizing "equitable powers" to "rewrite the parties' agreement" and compel her execution of a quitclaim deed without first holding a plenary hearing to determine the value of the property, thereby depriving defendant of her "share of the equity in the home."

"An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances,' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)). Marital settlement agreements "are generally favored by the courts as a peaceful means of terminating marital strife and discord so long as they are not against public policy." Dolce v. Dolce, 383 N.J. Super. 11, 20 (App. Div. 2006) (quoting Konzelman v. Konzelman, 158 N.J. 185, 194 (1999)); see Massar v. Massar, 279 N.J. Super. 89, 93 (App. Div. 1995) ("Marital agreements are essentially consensual and voluntary and as a result, they are

14

approached with a predisposition in favor of their validity and enforceability." (citing Petersen v. Petersen, 85 N.J. 638, 642 (1981))).

Thus, "[s]ettlement agreements in matrimonial matters, being 'essentially consensual and voluntary in character, . . . [are] entitled to considerable weight with respect to their validity and enforceability' in equity, provided they are fair and just." Dolce, 383 N.J. Super. at 20 (alterations in original) (quoting Petersen, 85 N.J. at 642). "To be sure, 'the law grants particular leniency to agreements made in the domestic arena' and vests 'judges greater discretion when interpreting such agreements.'" Quinn v. Quinn, 225 N.J. 34, 45-46 (2016) (quoting Pacifico v. Pacifico, 190 N.J. 258, 266 (2007)). "And while incorporation of a[n] [MSA] into a divorce decree does not render it immutable, nor its terms solely governed by contract law, nevertheless, if found to be fair and just, it is specifically enforceable in equity." Eaton v. Grau, 368 N.J. Super. 215, 224 (App. Div. 2004) (citations omitted).

Here, defendant does not argue that the MSA is unfair, unjust, or unenforceable. On the contrary, she seeks enforcement of the provision compelling plaintiff to sell the marital home after she vacated the premises and he moved in. There is no dispute that the plain language of paragraph sixteen of the MSA required such a sale. However, defendant also seeks her equitable

A-2810-19

share of the proceeds of the sale when neither the MSA nor the JOD entitled her to receive a share regardless of whether the home was sold or not. The only language in the MSA addressing the consequences of the sale of the home was contained in paragraph seventeen, which delineated the "tax liability for debt forgiveness related to the sale." Although the MSA contained numerous provisions related to equitable distribution, there was no mention of equitable distribution of the marital home.

Notably, defendant does not contend that any provision of the MSA entitled her to a share of the proceeds of the sale of the home but appeals to the court's equitable powers to allocate a percentage to her. While we understand defendant's equitable argument, we decline to supply or insert such a significant term into the MSA. "There is no dispute that courts possess the equitable authority to modify privately negotiated property settlement agreements." Addesa v. Addesa, 392 N.J. Super. 58, 66 (App. Div. 2007). However, "we are not persuaded that the trial court's duty to scrutinize marital agreements for fairness requires it to insert new terms because one party later suggests that a few changes would have made the agreement fairer." Dworkin v. Dworkin, 217 N.J. Super. 518, 523 (App. Div. 1987). Indeed, our Supreme Court has instructed that "a court should not rewrite a contract or grant a better

deal than that for which the parties expressly bargained." Quinn, 225 N.J. at 45.

That said, notwithstanding the text messages, it would have been preferable for the judge to have granted defendant's motion to compel the sale of the home as required under paragraph sixteen of the MSA. However, as there was no detriment to defendant from plaintiff retaining the house and no benefit to defendant from the sale, we decline to interfere with the judge's order denying the motion to compel the sale and requiring defendant to execute the quitclaim deed. "[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result." Ibid. "We reverse only to 'ensure that there is not a denial of justice' because the family court's 'conclusions are [] "clearly mistaken" or "wide of the mark."'" Parish v. Parish, 412 N.J. Super. 39, 48 (App. Div. 2010) (alteration in original) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). Under the peculiar circumstances presented here, reversal is not warranted.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2810-19